**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **GEORGE R. ARMSTRONG**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-392 (RMC)** |
| | ) | |
| **KATHERINE ARCHULETA, Director,** | ) | |
| **Office of Personnel Management**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

**OPINION**

Six former federal criminal investigators and Gulf War veterans sue the Office of

Personnel Management and Katherine Archuleta,[1] OPM's Director, (collectively OPM) under

the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), alleging that OPM wrongfully applied a

two-year statute of limitations and denied their administrative claims for unpaid overtime pay.

Plaintiffs allege that their overtime claims were timely filed with Government Accountability

Office (GAO),[2] because, as war veterans, they are entitled to a five-year statute of limitations

under the Barring Act, 31 U.S.C. § 3702(b)(2).  OPM asserts that the investigators did not timely

present their claims to the Civil Service Commission, OPM's predecessor agency, and that the

investigators' contemporaneous dual filing of a winning law suit in the U.S. Court of Federal

---

[1] Katherine Archuleta was sworn in as Director of the Office of Personnel Management in
November 2013; she is automatically substituted for former Director John Berry.  *See* Fed. R.
Civ. P. 25(d).

[2] GAO was formerly known as the General Accounting Office.

1

Claims (Claims Court),[3] and administrative claims for payment with GAO were insufficient because GAO could not "adjudicate" the claims. While the latter point may be accurate, there is no doubt that the Claims Court could—and did—adjudicate the investigators' claims and decided that all of them were owed backpay. OPM also rests on later amendments to the Barring Act, which allegedly bar the current suit. This argument also fails; the investigators' suit and GAO claims were filed before September 1994, and the amendments do not affect their entitlement to payment. Judgment will be entered for the investigators.

## I. FACTS

Plaintiffs are six former federal investigators and Gulf War veterans[4] who assert that they timely filed claims between 1990 and 1994 for overtime pay under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-214, with GAO and the Claims Court. They also allege that, as war veterans, they are entitled to a five-year statute of limitations under the Barring Act. OPM insists that the five-year statute of limitations in Section 3702(b)(2) for federal FLSA claims was first amended by Section 640 of the Treasury, Postal Service and General Government Appropriations Act of 1995 (Treasury-Postal Act for FY95), Pub. L. 103–329, 108 Stat. 2382 (1994), and later amended by the Treasury, Postal Service and General

---

[3] The Claims Court was formerly known as the United States Claims Court.

[4] Plaintiffs are George Armstrong, a former GS-13 criminal investigator at the Internal Revenue Service (IRS); Barry Baldwin, a GS-11 criminal investigator at the Drug Enforcement Administration (DEA); Mark Dillow, a former GS-9 criminal investigator at the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATF); Michael Gellick, a GS-9 criminal investigator at the U.S. Immigration and Customs Enforcement, Department of Homeland Security, formerly U.S. Customs (ICE); Gundar Grundberg, a former GS-12 criminal investigator at the Office of the Inspector General for the U.S. Department of Agriculture (OIG-Ag); and Patrick Johnson, a GS-12 criminal investigator at ICE. Compl. [Dkt. 1] ¶¶ 34, 39, 44, 49, 54, 59, Ex. 1-6.

Government Appropriations Act for 1996 (Treasury-Postal Act for FY96), Pub. L. No. 104-52, 109 Stat. 468, 468-69 (1995), and that these amendments limit all FLSA claims by federal employees to a two-year statute of limitations—whether the employees are members of the armed services or not.  For ease of analysis, the Court sets out the proceedings in the Claims Court and GAO separately.

### A.  Claims Court

Between April 17, 1990 and June 23, 1994, each Plaintiff filed suit in the Claims Court under the Tucker Act, 28 U.S.C. § 1491, to contest his job classification as exempt from the overtime provisions of FLSA.  The individual lawsuits were consolidated and captioned *Adams v. United States*, Civil Action No. 90-162C and Consolidated Cases (U.S. Ct. Fed. Claims).  *Adams* was covered by the Portal-to-Portal Pay Act of 1947, 29 U.S.C. § 255 (Portal Act) (an amendment to the FLSA), which provides a two-year statute of limitations or, for willful violations, a three-year limitations period for unpaid overtime required by the FLSA.  *See* 29 U.S.C. § 255(a).  Thus, lawsuits filed in the Claims Court from 1990 through 1994 could challenge the non-receipt of overtime pay from 1988 through 1992 or, for willful violations, 1987 through 1991.

On October 30, 1992 and December 11, 1992, the Claims Court decided that GS-9 and GS-11 criminal investigators at BATF, DEA, IRS, ICE, and the U.S. Secret Service, as well as GS-12 criminal investigators at ICE, were non-exempt, covered by the FLSA, and

therefore entitled to backpay.  Pls. Facts ¶ 9.  Plaintiffs Baldwin, Dillow, Gellick, and Johnson

were among those plaintiffs covered by the Claims Court's decisions.[5]  *Id.*

In 1994, the U.S. Department of Justice (DOJ), acting on behalf of the five

agencies, entered into settlement agreements with the investigators who had been found eligible

for FLSA overtime pay, including Plaintiffs Baldwin, Dillow, and Gellick.  The settlement

agreements provided that each eligible plaintiff would receive retroactive pay for "each pay

period during which he or she was employed, for a period of no more than two years preceding

the date a complaint was filed on his/her behalf until the date that the [agency] begins providing

FLSA overtime pay to such plaintiff."  Defs. Ex. 1 (DOJ Settlements) [Dkt. 14-1] at 5.[6]  The

agreements further provided that the settlements would not affect any plaintiff's right to continue

to pursue a claim for FLSA overtime compensation before GAO.  *Id.* at 10–11.

Because Plaintiff Johnson was a GS-12 criminal investigator at ICE, it appears

that certain of his claims were settled under the August 29, 2003 Partial Settlement Agreement

Covering Plaintiffs at the GS-12 Grade Level in Occupational Code 1811 at BATF, IRS-CID,

---

[5] The Claims Court also ruled that GS-12s at BATF, DEA, IRS, and the U.S. Secret Service, as well as GS-13s at all five agencies, were exempt from coverage by the FLSA and therefore were ineligible for overtime compensation.  Pls. Facts ¶ 9.

[6] The Court refers to the ECF pagination for the DOJ Settlements.  Defendants attached Plaintiffs' settlement agreements with DOJ to their motion to dismiss.  *See* Defs.' MTD [Dkt. 14] Ex. 1 (DOJ Settlements).  Plaintiffs referenced the DOJ Settlements in their Complaint.  *See, e.g.,* Compl. ¶ 37 ("Plaintiff Armstrong asserts that . . . he was entitled to back pay, liquidated damages, and interest . . . *up to the date covered under previous FLSA settlements* with him in his case filed in the [Claims Court].") (emphasis added).  Accordingly, the Court may consider the DOJ Settlements without turning Defendants' motion to dismiss into a motion for summary judgment.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice").

DEA, ICE and USSS.  *See* DOJ Settlements at 24-33.  The agreement provides that "the parties

have entered into this Agreement, without waiving their rights with respect to any and all

remaining issues regarding which plaintiffs are seeking additional recovery."  *Id*. at 32.

On December 1, 2004, the Claims Court extended its FLSA non-exempt

determination to GS-13 criminal investigators at all five federal agencies, including Plaintiff

Armstrong.  Nearly two years later, on November 22, 2006, DOJ and those investigators reached

settlement agreements, each of which again provided that it would not affect "any right any

plaintiff may have to continue to pursue a claim for backpay, liquidated damages, and/or interest

for FLSA overtime . . . against the United States not covered by this agreement."  DOJ

Settlements at 40.  All of the cases consolidated in *Adams v. United States* had settled by August

28, 2013.

Plaintiff Grundberg, a GS-12 criminal investigator at OIG-Ag, was determined to

be non-exempt, covered by the FLSA, and therefore entitled to backpay pursuant to a September

21, 2007 Claims Court decision.  Joint Response [Dkt. 37] at 2-3.  As noted by the parties,

Plaintiff Grundberg's FLSA claim covering the pay period ending May 2, 1992 to the pay period

ending October 29, 1994 was settled under a settlement agreement reached with Defendant

United States on June 1, 2011.  *Id*. at 3.

### B.  Government Accountability Office

On the same dates between 1990 and 1994 that each Plaintiff filed suit, he also

filed an administrative claim for backpay with GAO under the Barring Act.  At that time, such

administrative claims were not subject to a two- or three-year statute of limitations under the

Portal Act.  Instead, the Barring Act, which prescribes limitations periods for claims against the

United States, provided: [7]

> (a) Except as provided in this chapter or another law, the Comptroller General[8] shall settle all claims of or against the United States Government.  A claim that was not administratively examined before submission to the Comptroller General shall be examined by 2 officers or employees of [GAO] independently of each other.
>
> (b)(1) A claim against the Government presented under this section must contain the signature and address of the claimant or an authorized representative.  The claim must be received by the Comptroller General within 6 years after the claim accrues except
>
> > (A) as provided in this chapter or another law; or . . .
>
> > (2) When the claim of a member of the armed forces accrues during war or within 5 years before war begins, the claim must be presented to the Comptroller General within 5 years after peace is established or within the period provided in clause (1) of this subsection, whichever is later.
>
> > (3) The Comptroller General shall return a claim not received in the time required under this subsection with a copy of this subsection and no further communication is required.

31 U.S.C. § 3702.  Until May 23, 1994, the Barring Act's general 6-year statute of limitations

was applied by GAO to FLSA administrative claims.  (*In Matter of Transportation Systems

Center*, 57 Comp. Gen. 41 (1978); *Matter of Harry G. Tomkowiak*, 67 Comp. Gen. 247 (1988);

*Matter of Federal Firefighters*, 68 Comp. Gen. 681 (1989).

      The Comptroller General typically stayed administrative claims that were pending

in court.  As a result, GAO took no action on Plaintiffs' claims while they were pending in the

---

[7] As discussed, *infra*, the Barring Act was subsequently amended; the provisions cited here reflect the statutory language when Plaintiffs filed their GAO claims between 1990 and 1994.

[8] The Comptroller General is the head of GAO.  *See* http://www.gao.gov/cghome/index.html (last visited Jan. 27, 2014).

Claims Court.  On April 12, 1994, Plaintiffs' counsel wrote to GAO, alerting it to the decisions

of the Claims Court that certain GS-9 through GS-12 criminal investigators were not exempt

from FLSA and were entitled to overtime.  Pls. Facts ¶ 11.  The letter also reported that DOJ had

settled the claims of all GS-9 through GS-12 criminal investigators who worked at the DEA,

BATF and ICE.  *Id.*   Due to the different statutes of limitations (2 years under the Portal-to-

Portal Act and 6 years under the Barring Act), Plaintiffs were seeking an additional four years'

backpay for unpaid overtime.

On May 23, 1994, one month later, the Comptroller General issued his decision in

*In re Joseph M. Ford*, 73 Comp. Gen. 157 (1994).  *Ford* adopted the logic of the Claims Court in

*Armitage v. United States*, 23 Cl. Ct. 483 (1991), *aff'd*, 991 F.2d 746 (Fed. Cir. 1993), that the

precise two- to three-year statute of limitations in the Portal-to-Portal Act governs claims to

overtime pay from federal employees, and not the general six-year statute of limitations under

31 U.S.C. § 3702(b)(1) that applied to most claims against the United States.  *See In re Ford*,

73 Comp. Gen. at 160 ("For the reasons stated below, we agree with OPM and the other

executive agencies that 29 U.S.C. 255(a) [the Portal Act] constitutes an exception to the 6-year

statute of limitations period in 31 U.S.C. 3702(b).").

Shortly thereafter, on September 30, 1994, Congress rejected *Ford* when it

enacted the Treasury-Postal Act for FY95.[9]  Section 640 of that Act provided:

> In the administration of Section 3702 of title 31, United States
> Code, the Comptroller General of the United States shall apply a 6-

---

[9] Since the Fiscal Year (FY) for the federal government starts on October 1 of each year, the
Treasury-Postal Act for FY95 was adopted in September 1994 and appropriated funding for
FY95, starting on October 1, 1994.  Section 640 was then amended in November 1995 as part of
the Treasury-Postal Appropriations Act for FY96; Congress did not reach agreement on funding
until after FY96 had begun on October 1, 1995.

> year statute of limitations to any claim of a Federal employee
> under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 *et
> seq.*) for claims filed before June 30, 1994.

*Id.* The legislative history of this provision shows that Senator [Paul] Sarbanes had introduced the "Fairness for Federal Employees Act," S.2274, on July 1, 1994, in direct response to *Ford*. When introducing S.2274, he explained that its purpose was "to reverse a very destructive ruling by the General Accounting Office [GAO] to apply a retroactive change in the statute of limitations from 6 years to 2 years for Federal employees to file back pay claims under the Fair Labor Standards Act [FLSA] . . . , which goes against longstanding Federal policy and GAO's own interpretation of the appropriate statute of limitations . . . ." 140 Cong. Rec. 15736 (July 1, 1994) (statement of Sen. Sarbanes).  Senator Sarbanes noted that "the Office of Personnel Management and other Federal agencies have notified employees through regulations and bulletins, that they must file their FLSA claims within 6 years," in accord with this longstanding GAO policy.  *Id.*  The Bill would "require[] the Comptroller General of the United States to continue to apply a 6-year statute of limitation to any FLSA pay claims that have been filed before or have arisen before the date of enactment of this legislation."  *Id.*

Since Plaintiffs' claims were filed between April 17, 1990 and June 23, 1994, and were subject to a six-year statute of limitations under the Treasury-Postal Act for FY95, Plaintiffs' counsel wrote again to GAO in October 1994, requesting a meeting to discuss their FLSA claims.  In response, GAO advised Plaintiffs to seek relief from their respective employing agencies.  Plaintiffs wrote to their respective agencies requesting settlement of their backpay claims because they were entitled to a six-year statute of limitations under Section 640 of the Treasury-Postal Act for FY95.  The agencies refused; all five agencies denied Plaintiffs'

claims, stating that they lacked authority to apply a six-year statute of limitations.  Plaintiffs appealed to GAO.

However, on November 19, 1995, Congress amended Section 640 of the Treasury-Postal Act for FY95.  *See* Treasury-Postal Act for FY96.  The November 1995 amendment included the following proviso:

> Section 640 of Title VI of the Treasury Postal Service and General Government Appropriations Act, 1995 . . . is amended by adding at the end thereof the following new sentence: "This section [*i.e.*, Section 640 and the six-year statute of limitations] *shall not apply to any claim where the employee has received any compensation for overtime hours worked during the period covered by the claim* under any other provision of law, including, but not limited to, 5 U.S.C. § 5545(c), or to any claim for compensation for time spent commuting between the employee's residence and duty station.

*Id.* (emphasis added).  The House Committee on Appropriations explained:

> In the fiscal year 1995 Treasury-Postal Act, the Committee included a provision directing the Comptroller General to apply a six year statute of limitation to Fair Labor Standards Act overtime claims filed by June 30, 1994.  The Committee has been asked to consider repeal of this provision for two reasons: cost and fairness. The Committee will review this issue prior to conference with the Senate and, if deemed appropriate, will suggest changes at that time.  In the interim, the Committee directs the Office of Management and Budget (OMB) to provide an estimate of the cost of last year's provision to the government, including a high and low cost estimate as well as a description of the meth[o]dology and assumptions inherent in this calculation.

*See* Report 104-183, Treasury, Postal Service, and General Government Appropriations Bill, 1996, H.R. 2020 (104th Congress 1st Session) (Report 104-183) at 43, 92.  The amendment quoted was adopted.

Almost a year later, on October 19, 1996, the Comptroller General's authority to settle FLSA claims was transferred to the Director of OPM under Section 202(n)(1)(B) of the

General Accounting Office Act of 1996, Pub. L. 104–316, 110 Stat. 3843–44.  At that time,

Plaintiffs' administrative claims had still not been addressed by GAO and were transferred to

OPM.

Three years later, on May 7 and May 24, 1999, having heard nothing from OPM,

Plaintiffs' counsel requested a meeting to settle their FLSA claims.  This time, however,

Plaintiffs cited the five-year statute of limitations applicable to war veterans in the Barring Act,

31 U.S.C. § 3702(b)(2).  Plaintiffs acknowledged that the six-year statute of limitations in

31 U.S.C. § 3702(b)(1) had been amended, but averred that the five-year limitations period in

31 U.S.C. § 3702(b)(2), which specifically applied to Plaintiffs as Gulf War veterans, remained

in force.

In May 1999, OPM responded through its Assistant General Counsel:

> At issue is the statute of limitations applicable to those *Adams* plaintiffs who were called into the Reserves or National Guard during Operation Desert Storm/Shield.  Specifically, you suggest that the limitations period provided in 31 U.S.C. § 3702(b)(2) entitles these individuals to recovery on their [FLSA] claims for the five-year period retroactive from the commencement of Operation Desert Storm/ Storm [sic].
>
> *Because the underlying claim of whether these individuals are entitled to any recovery at all on their FLSA claims still is being litigated [in the Court of Federal Claims]*, we believe the issue of the applicable statute of limitations is not ripe for our consideration.  If your clients prevail on the merits of their FLSA claims, you may resubmit these claims.

Pls. Ex. 24 (May 27, 1999 Letter from OPM to Plaintiffs' Counsel) [Dkt. 18-5] at 45 (emphasis

added).

OPM's letter suggested that the agency was unaware that some Plaintiffs' claims had already been adjudicated by the Claims Court and settled by DOJ.  Therefore, Plaintiffs' counsel responded:

> This is to advise that in the case of certain of our clients who, for example, were GS-9, 11 and 12 criminal investigators at [ICE], their FLSA status was decided by the United States Court of Federal Claims in the above-captioned case [*i.e.*, *Adams v. United States*]. . . . Moreover, the claims of GS-9s and 11s at [BATF, IRS, the Secret Service, and DEA] and GS-9s, 11s and 12s at [ICE] were settled in 1994. . . .
>
> Accordingly, since the FLSA status of such employees has been decided with respect to the foregoing positions, we would propose to meet with you [to] discuss how their FLSA claims which are subject to Section 3702(b)(2) of the Barring Act, can be resolved.

Pls. Ex. 25 (June 22, 1999 Letter from Plaintiffs' Counsel to OPM) [Dkt. 18-5] at 47–48.  OPM did not respond.

On January 12 and June 17, 2011, after the Claims Court's December 2004 decision that GS-13 Plaintiffs were also entitled to overtime pay under the FLSA and such Plaintiffs' subsequent November 2006 settlement with the DOJ, Plaintiffs' counsel wrote yet again to John Berry, then-director of OPM, to resolve their claims.  Pls. Facts ¶ 28.  The Deputy Associate Director of OPM's Merit System Audit and Compliance answered and asked for additional information on Plaintiffs' claims.  *Id.*  Plaintiffs' counsel provided the requested information on in December 2011 and supplied additional information in March 2012.  *Id.*

Finally, on November 2, 2012, OPM decided that all of Plaintiffs' administrative claims were time-barred. *See* Compl. Ex. 1 (Armstrong Final OPM Decision) [Dkt. 1-1] at 5–6.[10] OPM summarized its decision as follows:

> OPM made two determinations: 1) Plaintiffs' claims from 1990 to 1994 originally filed with GAO were not timely as GAO was an improper forum (*see, e.g.*, [ECF No. 1-1] at 5-6); and 2) Plaintiffs' claims properly filed with OPM in 1999 and seeking application of a 5 or 6 year statute of limitations to Plaintiffs' claims were barred based on the plain language of Treasury, Postal Service, and General Government Appropriations Act of 1996, Pub. L. No. 104-52, 109 Stat. 468, 468-69 (1995), which limited employees such as Plaintiffs to a two year limitation period. OPM also noted that Plaintiffs had received compensation for some of their claims pursuant to settlement of the Court of Federal Claims/Federal Circuit litigation. (*See, e.g.,* [ECF No. 1-1] at 3, 6 n.3)

*See* Defs.' Mem [Dkt. 14] at 5.

OPM stated that Plaintiffs' reliance on the five-year statute of limitations under 31 U.S.C. § 3702(b)(2) was "misplaced" because Congress amended the Barring Act when it passed Section 640 of the Treasury-Postal Act for 1996. Armstrong Final OPM Decision at 7. OPM opined that Congress had imposed a universal two- or three-year statute of limitations for *all* FLSA claims against the federal government, including federal employees in an on-going war. It concluded that "the plain language of section 640 precludes application of the statute of limitations provided for in 31 U.S.C. § 3702(b)(2) for FLSA claims." *Id.*

---

[10] For ease of reference, the Court cites OPM's final decision on George Armstrong's administrative claim. OPM issued decisions with the same reasoning to all six plaintiffs in this case. *See* Compl., Ex. 2 (Baldwin OPM Final Decision) [Dkt. 1-2], Ex. 3 (Mark Dillow OPM Final Decision) [Dkt. 1-3], Ex. 4 (Michael Gellick OPM Final Decision) [Dkt. 1-4], Ex. 5 (Gundar Grundberg OPM Final Decision) [Dkt. 1-5], Ex. 6 (Patrick Johnson OPM Final Decision) [Dkt. 1-6].

Plaintiffs filed the instant Complaint under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), alleging that OPM's final decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A). Defendants moved to dismiss for failure to state a claim, Dkt. 14, and Plaintiffs filed a cross-motion for summary judgment, Dkt. 19.[11]

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court must treat the complaint's factual allegations as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

---

[11] On February 6, 2014, this Court dismissed Plaintiffs' Complaint on the basis of *res judicata*, citing *Adams, see* Op. [Dkt. 27], Order [Dkt. 28], but later vacated the dismissal, *see* Order [Dkt. 33] (noting that the "failure to sever the war veterans inquiry from prior litigation concerning the default statute of limitations could create a manifest injustice").

### B. Federal Rule of Civil Procedure 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, if the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

### C. Administrative Procedure Act

The APA requires a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In reviewing administrative action, the role of the district court is to "sit as an appellate tribunal" and review the case as a matter of law. *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Such review is limited to the administrative record, and "not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *accord Alliance for Bio-Integrity v. Shalala*, 116 F. Supp. 2d 166, 177 (D.D.C. 2000).

14

When reviewing an agency's interpretation of a statute, a court must undertake a two-step analysis as set forth in *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).  *See Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 754 (D.C. Cir. 2007).  First, a court must determine whether "Congress has directly spoken to the precise question at issue" and, if so, the court must "give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842–43.  To decide whether Congress has addressed the precise question at issue, a court must analyze the text, purpose, and structure of the statute.  *Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120, 124 (D.C. Cir. 2006).

If the statute is silent or ambiguous on the question, the court must proceed to the second step of the *Chevron* analysis and determine whether the agency's interpretation is based on a permissible construction of the statute.  *Chevron*, 467 U.S. at 843.  Under the second step of *Chevron*, a court must determine the level of deference due to the agency's interpretation of the laws it administers.  *See Kempthorne*, 477 F.3d at 754.  Generally, if an agency promulgates its interpretation through notice-and-comment rulemaking or formal adjudication, a court gives the agency's interpretation *Chevron* deference.[12]  *United States v. Mead Corp.*, 533 U.S. 218, 230–31 (2001).  A court should determine whether the agency's interpretation is permissible or reasonable, giving controlling weight to the agency's interpretation unless it is arbitrary, capricious, or manifestly contrary to the statute.  *See Kempthorne*, 477 F.3d at 754.

---

[12] Not all agency interpretations are worthy of deference, such as those advanced by an agency as a "post-hoc rationalization" for agency action in litigation or where there is no reason to suspect the interpretation reflects the agency's "fair and considered judgment on the matter in question." *Chase Bank*, 131 S. Ct. 871, 881 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)). When a statute is not ambiguous, no deference ensues.  *Chase Bank*, 131 S. Ct. at 882 (*quoting Christensen v. Harris County*, 529 U.S. 576, 588 (2000)).

## III.  ANALYSIS

Defendants move to dismiss the Complaint for failure to state a claim, arguing that OPM correctly interpreted 31 U.S.C. § 3702, as amended by Section 640 in the Treasury-Postal Act for FY96, when it denied Plaintiffs' claims as time-barred.  Defendants further argue that OPM's interpretation of the statute is entitled to deference.  Plaintiffs counter that their administrative claims were preserved as of the time they filed with GAO, and contest the notion that Section 640 of the Treasury-Postal Act for FY96 amended *all* provisions of 31 U.S.C. § 3702.  Plaintiffs assert that the five-year statute of limitations for war veterans under Section 3702(b)(2) was not addressed in the legislation and, necessarily, remains in force.  Plaintiffs also challenge that OPM's contention that its interpretation is entitled to deference; Plaintiffs argue the interpretation "contravene[s] . . . clearly discernible legislative intent and [is] otherwise unreasonable."  Mot. for Summ. J. at 21 (internal quotation marks omitted).[13]

### A.  Presentment

Plaintiffs filed claims with GAO between 1990 and 1994, claiming the right to backpay for unpaid overtime.  *See, e.g.*, Armstrong Final OPM Decision.  Since Plaintiffs' claims with GAO and their suits before the Claims Court were filed simultaneously, the Claims Court had obviously not yet ruled whether some or all Plaintiffs were entitled to overtime pay.  GAO followed its customary practice and held all Plaintiffs' claims without returning them, awaiting the Claims Court's decisions.  OPM argues here that GAO lacked statutory authority to *adjudicate* the applicability of FLSA exemptions and only had authority to *settle* previously-

---

[13] The Court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question jurisdiction) because, *inter alia*, the Complaint seeks review of agency action under 5 U.S.C. § 702.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2) (stating that venue is proper in "any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

adjudicated claims, *i.e.*, to determine amounts due as backpay under FLSA once a different entity declared Plaintiffs eligible for overtime pay. OPM argues that Plaintiffs' claims were not properly filed until they were received by the proper adjudicating agency, OPM, in September and November of 1999.

OPM never cites any statutory or regulatory authority by which it has *sole* authority to adjudicate—that is, decide contested agency claims that an FLSA exemption applies in the face of an employee challenge—claims of inappropriate classification and unpaid overtime. OPM has authority to issue regulations that govern classifications, which it has done, and individual agencies apply those regulations in deciding which employees are entitled to overtime pay, which Plaintiffs' employing agencies did. OPM's cites to *Baca v. United* States, 29 Fed. Cl. 354 (Fed. Cl. 1993) and *Zumerling v. Devine*, 769 F.2d 745 (Fed. Cir. 1985) do not alter this analysis, as they only reflect OPM's rulemaking authority.

Curiously, OPM never addresses FLSA §§ 204(f) and 216, which specifically authorize public employees to file lawsuits in court without prior administrative exhaustion. The FLSA authorizes OPM "to administer the provisions of this chapter with respect to any individual employed by the United States [with certain irrelevant exceptions]. *Nothing in this subsection shall be construed to affect the right of an employee to bring an action for unpaid minimum wages, or unpaid overtime compensation, and liquidated damages under section 216(b) of this title.*" 29 U.S.C. § 204(f). (emphasis added). In turn, 29 U.S.C. § 216(b) states that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves

and other employees similarly situated [with an unrelated exception]." *Id.* OPM has recognized

this alternative avenue for relief in its Federal Personnel Manual (FPM) Letter No. 551-9, issued

on March 30, 1976, in which OPM stated:

> [A]n employee alleging an FLSA violation has a right to file a
> complaint directly with the Civil Service Commission [the former
> CSC, now OPM]. *The law itself also establishes the right for an*
> *employee to bring action in a U.S. district court* either directly or
> after having received the CSC decision on his/her FLSA
> complaint.

Armstrong Final OPM Decision at 4 (emphasis added).  In its letters denying Plaintiffs' claims

for overtime pay, OPM cited and quoted Letter No. 551-9, ignoring its last sentence.  *Id.*

Plaintiffs here each filed a lawsuit, later consolidated, before the Claims Court

between 1990 and 1994, on the same dates that each man filed his claim for backpay with GAO.

Plaintiffs did not ask GAO to adjudicate, or decide, their rights to backpay; their Claims Court

lawsuits were for that purpose.  Regulations had been issued defining exempt and non-exempt

jobs, the relevant five agencies had interpreted and applied those regulations to Plaintiff

investigators, and Plaintiffs complained about the application of the regulations in Claims Court,

while simultaneously seeking a backpay settlement with GAO.  It appears to have been standard

procedure to file with GAO and to await a court opinion, and OPM does not argue otherwise.

While OPM argues vehemently that it (or, more specifically, its predecessor, the Civil Service

Commission), had authority to decide which positions were exempt, *see* 20 U.S.C. § 204(f)

(agency "authorized to administer the provisions of this chapter with respect to any individual

employed by the United States"), Plaintiffs' lawsuits and GAO claims did not contravene that

authority.

18

The parties contest the importance of GAO's 1976 interpretation of its statutory authority, as expressed in opinions issued by the Comptroller General.  When OPM denied Plaintiffs' claims as untimely, it cited a 1976 Comptroller General Opinion, which announced a change in GAO's approach:

> [GAO] consider[s] that the role granted to the [Civil Service Commission, now OPM] to administer the FLSA with respect to Federal employees, necessarily carries with it the authority to make final determinations as to whether employees are covered by the various provisions of the [FLSA].  Accordingly, [GAO] will not review the Commission's determinations as to an employee's exemption status.

See Armstrong Final OPM Decision at 3–4 (quoting *In re* Claims Representatives and Examiners—Exemption from Fair Labor Standards Act Overtime Coverage, B-51325 (Comp. Gen.), 1976 WL 9626, at *2 (Oct. 7, 1976)).  This analysis does not carry the weight that OPM would give it.  OPM has the "authority to make final determinations" on FLSA coverage in its role as administrator and regulator; OPM's "final determinations" then are applied by each agency, as happened here.  What is missing from the argument altogether is the basis for OPM's assertion that a federal employee who *disagrees* with OPM's final determination, as applied, *must file a claim with OPM* before filing suit.  To the contrary, the express language of the FLSA states otherwise.

The Court concludes that OPM has failed to demonstrate that administrative exhaustion is mandated before a federal employee could bring an FLSA claim to court between 1990 and 1994.  OPM does not contest the customary practice at GAO of holding federal FLSA claims until adjudicated elsewhere (by the Claims Court or CSC) and then settling the claims under the six-year statute of limitations GAO applied at the time.  Accordingly, the Court

concludes that Plaintiffs' claims, filed simultaneously with the Claims Court and administratively with GAO between 1990 and 1994, were filed timely and preserved their rights.

### B.  Statute of Limitations

The Treasury-Postal Act for FY95 imposed a two-year statute of limitations on federal-employee FLSA claims that were filed after June 30, 1994.  Since all Plaintiffs' claims were filed with GAO and with the Claims Court before that date, this limitation does not apply to Plaintiffs.  However, the Treasury-Postal Act for FY96 amended the law and specified that the six-year statute of limitations "shall not apply to any claim where the employee has received any compensation for overtime hours worked during the period covered by the claim."  Pub. L. 104–52, 109 Stat. 468 (1995).

Plaintiffs respond that they are covered by the five-year statute of limitations granted to war veterans under 31 U.S.C. § 3072(b)(2), and that neither Treasury-Postal Act amended that statute of limitations.  OPM does not dispute that all Plaintiffs here are veterans of the Gulf War.

Whether OPM correctly decided that Plaintiffs are not entitled to a five-year statute of limitations under Section 3072(b)(2) depends on whether OPM properly interpreted the Barring Act, as amended by Section 640 of the Treasury-Postal Act for FY96.  Therefore, the Court conducts the analysis required by *Chevron.  See Chevron*, 467 U.S. 837.  The inquiry requires the Court to first assess whether "Congress has directly spoken to the precise question at issue."  *Id.* at 842-43.  If so, the Court must "give effect to the unambiguously expressed intent of Congress.  *Id*. at 843.

When Plaintiffs filed claims with GAO from 1990 to 1994, the Barring Act provided that a "claim must be received by the Comptroller General within 6 years after the claim accrues except as provided in this chapter or another law." 31 U.S.C. § 3702(b)(1). Until *Ford* in May 1994, this provision was interpreted by the Comptroller General to apply to all claims against the United States, including federal-employee backpay claims under the FLSA. In the very next subsection of Section 3702, the Barring Act provided that "[w]hen the claim of a member of the armed forces accrues during war or within 5 years before war begins, the claim must be presented . . . within 5 years after peace is established or within the period provided in clause (1) of this subsection." *Id.* § 3702(b)(2).

Congress amended the Barring Act by way of Section 640 of the Treasury-Postal Act for FY95, which codified a six-year statute of limitations for federal FLSA claims filed before June 30, 1994, leaving in effect the two- and three-year limitations period for claims filed after June 30, 1994. Pub. L. 103–329, 108 Stat. 2382 (1994). Further, Congress amended Section 640 again in November 1995 to limit recovery for unpaid overtime; the amendment specified that the six-year statute of limitations "shall not apply to any claim where the employee has received any compensation for overtime hours worked during the period covered by the claim under any other provision of law . . . ." Treasury-Postal Act of FY96, Pub. L. 104–52, 109 Stat. 468 (1995).[14]

In the Treasury-Postal Act for FY95, Section 640 stated that it applied to "Section 3702 of title 31, United States Code." In turn, the Treasury-Postal Act for FY96 stated that it

---

[14] The parties seem to agree that the November 1995 amendment to Section 640 bars these Plaintiffs from recovering backpay beyond a two-year period if not entitled to a longer period due to their status as war veterans.

amended Section 640 of the Treasury-Postal Act for FY95.  However, Congress expressly

modified only the normal six-year statute of limitations contained in Section 3702(b)(1) of the

Barring Act, for the purpose of limiting federal FLSA claims.  Even though an agency

interpretation is entitled to deference, *see Mead Corp.*, 533 U.S. at 230–31, this Court will not

jettison the clear statutory language applicable to claims against the United States by war

veterans in Section 3702(b)(2), which is still part of the law, despite other changes to Section

3702.[15]

Questions about the scope of the amendments to the Barring Act are resolved by

reviewing the underlying congressional purposes in September 1994 and November 1995.  *See*

*Ranbaxy Labs. Ltd.*, 469 F.3d at 124 (noting that a court must analyze the text, purpose, and

structure of the statute).  Section 640 of the Treasury-Postal Act for FY95, as amended by the

Treasury-Postal Act for FY96, was directed entirely to the run-of-the-mill statute of limitations

for federal-employee FLSA claims.  On May 23, 1994, the Comptroller General issued his

---

[15] For instance, GAO has been completely supplanted by a more complex settlement scheme in
subsection (b)(1) while subsection (b)(2) remains unchanged.  The Barring Act now reads, in
relevant part:

> (b)(1) A claim against the Government presented under this section
> must contain the signature and address of the claimant or an
> authorized representative. The claim must be received by the
> official responsible under subsection (a) for settling the claim or by
> the agency that conducts the activity from which the claim arises
> within 6 years after the claim accrues except—
>
> (A) as provided in this chapter or another law; or . . .
>
> (2) When the claim of a member of the armed forces accrues
> during war or within 5 years before war begins, the claim must be
> received within 5 years after peace is established or within the
> period provided in paragraph (1) of this subsection, whichever is
> later.

decision in *In re Joseph M. Ford*, 73 Comp. Gen. 157 (1994).  That decision applied both

retroactively and prospectively; it specified that "[c]onsistent with our usual practice, [GAO] will

apply the 2-year statute of limitations . . . to all FLSA claims that have not been *settled* prior to

the date of today's decision [*i.e.*, May 23, 1994]" (emphasis added).  *Id.  Ford* omitted any

discussion of—and did not purport to modify—the explicit five-year statute of limitations

afforded war veterans in 31 U.S.C. § 3702(b)(2).

       Fewer than five months later, Congress enacted the Treasury-Postal Act for FY95

and, in Section 640, adopted a similar distinction between a six-year and two-year statute of

limitations for federal FLSA claims: claims filed before June 30, 1994 would be subject to a six-

year statute of limitations, while claims filed after that date would be subject to a two-year

statute of limitations.  The limited legislative history shows that Congress did not act in a

vacuum.  Section 640 was adopted both to limit and to codify the *Ford* decision; it only modified

31 U.S.C. § 3702(b)(1).  *See Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) ("The Congress did

not enact the Consumer Credit Protection Act in a vacuum."); *Planned Parenthood of Metro.

Wash., D.C., Inc. v. Horner*, No. 88-1751, 1988 WL 126240, at *3 (D.D.C. Nov. 15, 1988)

("Even if the statute could be considered ambiguous . . . , *Chevron* is inapplicable for another

reason as well.  Quite simply, Congress was not operating in a vacuum when it passed Section

618.").

       As OPM argues, Congress amended Section 640 in 1995 by adding the following

sentence: "This section shall not apply to any claim where the employee has received any

compensation for overtime hours worked during the period covered by the claim under any other

provision of law . . . ."  Treasury-Postal Act for FY96.  The additional sentence does not change

the character of Section 640 as originally enacted.  The proviso merely limited the application of

Section 640, which, at its broadest, only applied to claims under 31 U.S.C. § 3702(b)(1).  The

purpose behind the amendment to Section 640 in the Treasury-Postal Act for FY96 appears to

have been cost and "fairness" to civilian government employees who did not file an FLSA claim

before June 30, 1994.  Report 104-183 at 43, 92.  A longer period for filing FLSA claims by

government employees off at war would not contradict either of these rationales; indeed,

Congress made no whisper of an intention to alter their rights.

This conclusion is supported by the terms of 31 U.S.C. § 3702(b)(2) itself.  On its

face, subsection (b)(2) was enacted to protect service members at war whose claims might

otherwise be compromised by their military service.  For this reason, war veterans were, *and are*,

given additional time to file any claim against the United States after the cessation of hostilities.

Subsection (b)(2) operates independently of the general provisions of subsection (b)(1);

subsection (b)(2) specifies that veterans can file a qualifying claim "5 years after peace is

established, or within the period provided in paragraph (1) of this subsection, *whichever is later*."

*Id.* (emphasis added).  This language demonstrates that Congress fully intends to permit war

veterans to file claims under *either* statute of limitations.  It is a basic canon of statutory

interpretation that "'[a] statute should be construed so that effect is given to all its provisions, so

that no part will be inoperative or superfluous, void or insignificant.'"  *Corley v. United States*,

556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (other quotation

omitted)).  The Court will not advance a statutory reading that renders nugatory the five-year

statute of limitations for veterans serving at war.

24

## IV.  CONCLUSION

All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court.  As a result, Plaintiffs Armstrong, Baldwin, Dillow, Gellick, Johnson and Grundberg can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

Accordingly, the Court will deny Defendants' Motion to Dismiss [Dkt. 14] and grant Plaintiffs' Cross-Motion for Summary Judgment [Dkt. 19].  Therefore, judgment on liability will be entered in favor of Plaintiffs and the case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations. A memorializing Order accompanies this Opinion.

Date: December 30, 2014                     _____/s/_____
                                            ROSEMARY M. COLLYER
                                            United States District Judge